# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| NICHOLAS CLARKSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CV411-125 |
| | ) |
| STANLEY WILLIAMS, *Warden*, | ) |
| | ) |
| Respondent. | ) |

# REPORT AND RECOMMENDATION

Convicted upon his guilty plea for, *inter alia*, armed robbery, doc. 12-12 at 32, 54-84,[1] Nicholas Clarkson petitions this Court for 28 U.S.C. § 2254 habeas relief. Doc. 1. Conceding that his petition is untimely, he moves to equitably toll 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations. Doc. 2. He also concedes that: (1) in state court he pled guilty to, *inter alia*, armed robbery, but did not appeal the December 15, 2004 judgment against him; and (2) when he litigated his December 8, 2008 state habeas petition, § 2244(d)(1)'s one-year limit had already

---

[1] All documents referenced here have been "E-filed." The Court is thus using the electronic screen page inserted onto the top of each page by the Court's CM/ECF software. It may not always align with the original, printed-page pagination.

been reached, even though the state's own four-year limit for state habeas petitions had not. *Webster v. Moore*, 199 F.3d 1256, 1269 (11th Cir. 2000) ("A state-court petition ... that is filed following the expiration of the [federal habeas] limitations period cannot toll that period because there is no period remaining to be tolled."); *Brown v. Hooks*, 2007 WL 1625074 at * 2 (M.D. Ala. Jun. 5, 2007). Doc. 2 at 3-4.

Clarkson thus fell into the federal time trap: A Georgia defendant must keep his review process going and cannot allow more than one year's worth of time gaps to form along the way. And if gaps do form between review segments (i.e, there is no "state proceeding" in play), the federal clock ticks during each gap. *Wall v. Kholi*, ___ U.S. ___, 131 S. Ct. 1278, 1283 (2011); *Chavez v. Sec'y Fla. Dept. of Corrs.*, 647 F.3d 1057, 1062-63 (11th Cir. 2011); *Sallie v. Humphrey*, 2011 WL 2261482 at * 2 n. 1 (M.D. Ga. Jun. 9, 2011); § 2244(d)(2).

Many simply do not know that the federal clock is ticking in the background when they pause between state-review filings. Clarkson is one of them. He took no direct appeal from his conviction but waited, as Georgia law permitted, nearly four years to file his state habeas petition. He did not realize that during those four years the one-year, federal clock

was running. Hence, even though he timely completed his state habeas petition process, it was too late to file his federal habeas petition because more than one year elapsed between his conviction and the date he filed his state habeas petition.

Again, Clarkson concedes that point. But since his sentencing judge and his trial and collateral attack lawyers failed to warn him of this consequence, doc. 2 at 5-6, 10-11; *see also* doc. 12-12 at 80 (judge's post-sentencing warning), he invokes equitable tolling under *Holland v. Florida*, 560 U.S. ___, 130 S.Ct. 2549, 2564 (2010).[2] *Id.* at 11-13. As a layperson it was reasonable," Clarkson contends, "to assume that he had four years within which to file a petition for habeas relief in state *and* federal court . . . [which means] the equitable tolling inquiry should be assessed in the context of these case-specific facts." Doc. 2 at 6 (emphasis added). Conversely,

> it would be unreasonable to require a young man with a high school degree to suspect that the assessment of four actors within the legal system -- including a member of the bench with the authority

---

[2] Petitioners can also surmount the time bar through the fundamental miscarriage of justice exception. This is "exceedingly narrow" and requires Clarkson to demonstrate that he is factually rather than legally innocent of the underlying conviction. *San Martin v. McNeil*, 633 F.3d 1257, 1268-69 (11th Cir. 2011). He does not make that argument.

3

to sentence him to twenty-five years' incarceration, two seasoned trial attorneys, and a practitioner holding himself out as competent to handle habeas proceeding -- would be so unreliable that, in addition to securing funds, retaining counsel, and attempting to comply with the deadline he was told applied, he also needed to perform independent legal research on [federal limitations law] from prison.

Doc. 2 at 8. All that bad advice, he concludes, supports equitable tolling.

Under *Holland* Clarkson "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland,* 130 S.Ct. at 2562 (quotes omitted). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* at 2565 (quotes and cite omitted). As for extraordinary circumstances, it is Clarkson's burden to prove them; "[m]ere conclusory allegations are insufficient to raise the issue of equitable tolling." *San Martin*, 633 F.3d at 1268 (cite omitted). He also must "show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *Id.* at 1267.

This Court thus must consider: (1) the weight that should be accorded to the lawyers' and trial judge's advice in determining whether Clarkson meets the extraordinary circumstances prong; and (2)

Clarkson's diligence. As for his lawyers, only "serious attorney misconduct, including acts of *gross* negligence and acts of outright willful deceit, can constitute 'extraordinary circumstances' which would justify equitable tolling of a movant's § 2255 motion. *Smith v. United States*, 2011 WL 1207647 at * 1 (11th Cir. Apr. 1, 2011) (emphasis added; quotes and alterations omitted); *see also Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005) (rejecting petitioner's argument that the state impeded his timely filing of his § 2254 petition by providing him an incompetent attorney through the Florida counsel registry system), *aff'd*, 549 U.S. 327 (2007); *Webster v. Secr'y for Dep't of Corrs.*, 384 F. App'x 979, 983 (11th Cir. 2010) (same result based on attorney's failure to inform petitioner of the decision on his direct appeal and his "abandonment" of petitioner); *Scott v. Duffy*, 372 F. App'x 61, 63 (11th Cir. 2010) (attorney's negligent failure to file a direct appeal as directed by petitioner is not the type of State impediment envisioned in § 2244(d)(1)(B), and thus supplied no tolling grounds).

Thus, for the attorney-misconduct part of his *Holland* showing, Clarkson must point to gross if not intentional misconduct. In *Smith*, for example, a 28 U.S.C. § 2241 petitioner argued "that the district court

5

erred in denying him leave to appeal his convictions and sentences because his attorney . . . repeatedly *refused* to file an appeal on his behalf. The government agree[d] that this case should be remanded to the district court because the limitations period applicable to Smith's habeas corpus petition might have been equitably tolled by [counsel's] *refusal* to file an appeal." *Id.* (emphasis added). The Eleventh Circuit remanded

> to the district court to make factual findings regarding Smith's allegations of attorney misconduct. "In the end" it is impossible to say "whether extraordinary circumstances are present that entitle [the movant] to equitable tolling because the district court made no findings of fact with respect to whether counsel's behavior was as appalling as [the movant] alleges," and "[u]ltimately, whether equitable tolling is warranted is a decision that must rest on facts." *Downs*, 520 F.3d at 1323, 1325.

*Id.* at * 2.

Nothing like that is asserted here, only the failure of counsel to warn Clarkson about the somewhat tricky one-year rule. Clarkson's case thus falls short of even *Webster*, 384 F. App'x at 980, where equitable tolling was denied, despite Webster's claim that his public defender failed to inform him of a decision on his direct appeal and abandoned him. Webster had made only one inquiry as to the status of his appeal, three years after he filed the notice of appeal. Hence, he failed to act with due

diligence in investigating the status of his appeal. Nor did he rely on any affirmative representation of notification of court decision to excuse his lack of diligence. *Id.*

*Webster* thus illuminates the bottom line: Judicial systems are operated by human beings who err. Defendants know this. They thus must make a reasonable inquiry, even if told they may rest easy and do nothing, where a large amount of time marches by and nothing happens in their cases. *Id.* at 983; *see also Chavez*, 647 F.3d at 1070-73 (§ 2254 petitioner was not entitled to an evidentiary hearing on equitable tolling; post-conviction counsel's alleged conduct of meeting with petitioner only once combined with his alleged failure to file the motion promptly or correctly did not amount to serious attorney misconduct as would show an extraordinary circumstance, but instead amounted to allegations of garden variety negligence or neglect, and petitioner did not make any attempt to preserve his rights and was not reasonably diligent); *Meyers v. Allen*, 420 F. App'x 924, 926-27 (11th Cir. 2011) (petitioner failed to pursue his habeas claims with reasonable diligence, and no equitable tolling was warranted, even though his lawyer abandoned him; he was not mentally retarded and he did nothing to advance his claim until he

learned that his execution was scheduled, and did not even attempt to inquire into the status of his case).

The failure of Clarkson's lawyers to warn him, then, is not enough here. *Chavez*, 647 F.3d at 1066-70. Like everyone else, he must bear the sometimes even fatal risk of simple malpractice. *Coleman v. Thompson*, 501 U.S. 722, 752-57 (1991) (condemned prisoner pursuing state habeas relief waived right to federal review, and thus could be executed, after his state habeas counsel negligently missed, by 3 days, deadline for appealing denial of state habeas petition); *id.* at 754 (applying REST. AGENCY 2D § 242 (1958) ("master is subject to liability for harm caused by negligent conduct of servant within the scope of his employment").

But, Clarkson reminds, a *judge* spoke to him here, not just his lawyers. He cites *Knight v. Schofield*, 292 F.3d 709, 711 (11th Cir. 2002) (tolling applied where petitioner was assured that the state court would contact him, and he demonstrated diligence in pursuing the information when the state court clerk inadvertently sent notice of the decision to the wrong person).[3] Doc. 2 at 6 n. 6. This distinguishes his case from

---

[3] This distinction was important enough in *Lusk v. Ballard*, 2010 WL 3061482 at * 7 (N.D. W. Va. Jul. 22, 2010), *adopted*, 2010 WL 4723619 at * 1 (N.D. W. Va. Nov. 15, 2010), to compel a nuanced examination of the state court record, where one of the

8

*Webster*, since a state court judge's advice that could lead a reasonable layperson to believe that the next important (and, Clarkson reasonably inferred, *only*) deadline in the process available to him was four years away, not one. So, he presents an analytical wrinkle not seen in the above-cited cases: Whether a state sentencing judge's failure to warn a defendant of a "trap for the unwary" *combined* with counsel's error can satisfy *Holland's* two prongs.

However, Clarkston cites no law requiring the state court judge to advise him beyond his state-law appellate rights. Yet, lawyers must now advise their clients whether a guilty plea carries the risk of deportation, *Padilla v. Kentucky*, ___ U.S. ___, 130 S.Ct. 1473, 1486 (2010), and before *Padilla* many no doubt would never have thought that such a duty existed. And the distinction between what courts and lawyers say and do has driven the result in many equitable tolling cases:

---

tolling grounds advanced was a state sentencing judge's advice that Lusk held no right to appeal his guilty-plea conviction. *Lusk*, 2010 WL 3061482 at * 7-11. Still, Lusk failed to prevail because the advice was not materially misleading. *Id.* at * 10 ("Barring issues of voluntariness, an appeal does not lie when a petitioner has pleaded guilty. A thorough examination of the plea agreements and supporting affidavits, the plea hearing transcripts, the sentencing hearing transcripts, and the judgment orders leads the Court to conclude that the judge informed the petitioner of his rights in light of his plea agreement. Therefore, the petitioner's assertion that the court improperly advised him of his appeal rights during the plea colloquy is unavailing."). And Lusk was not diligent in the time that he did take to file his § 2254 petition. *Id.* at * 11.

9

> We have allowed equitable tolling to petitioners who have relied detrimentally on our incorrect statements of the law. *See, e.g., Townsend v. Knowles*, 562 F.3d 1200, 1205–06 (9th Cir. 2009), *abrogated on other grounds by Walker v. Martin*, — U.S. —, 131 S.Ct. 1120, 179 L.Ed.2d 62 (2011); *Harris v. Carter*, 515 F.3d 1051, 1055–56 (9th Cir. 2008). We have also suggested that a litigant who is "affirmatively misled" by a court's erroneous instructions may be entitled to tolling. *Brambles v. Duncan*, 412 F.3d 1066, 1070 (9th Cir.2005). *See also Pliler v. Ford*, 542 U.S. 225, 235, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004) (O'Connor, J., concurring). Other circuits have extended these principles to misinformation provided by a court clerk. *See, e.g., Coppage v. McKune*, 534 F.3d 1279, 1281–82 (10th Cir.2008) (prisoner excused from checking status of state postconviction motion during period when clerk assured prisoner that court would not act); *Knight v. Schofield*, 292 F.3d 709, 711 (11th Cir. 2002) (tolling where clerk of state supreme court failed to notify petitioner of decision denying relief, as clerk had promised). *Cf. Corjasso v. Ayers*, 278 F.3d 874, 878–80 (9th Cir.2002) (tolling where pro se habeas petition mishandled by district court clerk).

*United States v. Buckles*, 647 F.3d 883, 891 (9th Cir. 2011); *see also Hamilton v. Yates*, 2011 WL 1097753 at * 8 n. 44 (C.D. Cal. Jan. 6, 2011) (collecting cases). These erroneous-instruction cases supplied enough cause to warrant a 28 U.S.C. § 2254, Rule 4 response from the state here. Doc. 6. The state has responded by moving to dismiss Clarkson's petition as untimely. Doc. 11 (motion); *see also* doc. 14 (response).

The Court concludes that Clarkson is not entitled to equitable tolling. The law requires petitioners like him to "show diligence not merely at the federal level, but throughout the entire state process in

10

order to have equitable tolling available to him. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999). '[E]quity is not intended for those who sleep on their rights.' *See, Fisher v. Johnson*, 174 F.3d 710 (5th Cir.1999) (citing *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989))." *McGraw v. McCall*, 2010 WL 4825747 at * 9 (D.S.C. Aug. 4, 2010). And, a

> [p]etitioner's lack of familiarity with the law is not by itself an extraordinary circumstance warranting equitable tolling. *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). Furthermore, the [trial] court has no affirmative duty to notify Petitioner of the AEDPA's statute of limitation. *Id.* Grounds for equitable tolling must be beyond the control of the petitioner or his attorney. *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999).

*Jordan v. Ryan*, 2011 WL 4101517 at * 2-3 (D. Ariz. Sep. 14, 2011) (denying equitable tolling to time-barred § 2254 petitioner who argued that he did not know of and was not informed by the state court judge of the federal one-year statute of limitation).

The *Raspberry* court applied *Pliler*, cited by the state here. Doc. 11-1 at 6. In *Raspberry*, the § 2254 petitioner exhausted two claims before the state courts but omitted them from his first § 2254 petition before the federal court, so it dismissed it as unexhausted. 448 F.3d at 1152. Rasperry then sought habeas relief from the state court but that was

denied. He then filed a "First Amended Petition" back in federal court. *Id.* But like his first § 2254 petition, he *again* omitted his two previously exhausted claims. *Id.* Those two claims, if timely presented, could have stopped the federal time clock. The district judge thus dismissed the entire petition as untimely, and on appeal Rasperry claimed error, arguing that the first time around the district court should have warned him of his right to amend his first petition to include his exhausted claims (and thus be spared the one-year limitation). Since it did not, he argued, he was entitled to equitable tolling. *Id.* at 1153.

That would impose an unworkable burden on district judges, reasoned the Ninth Circuit in rejecting that argument. *Id.* Plus it

> would run counter to the Supreme Court's holding in *Pliler v. Ford*, 542 U.S. 225, 231, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004). In *Pliler*, the Court reversed our decision requiring district judges to warn *pro se* petitioners with mixed petitions that their federal claims would be time-barred upon their return to federal court. *Id.* The Court reasoned that "[d]istrict judges have no obligation to act as counsel or paralegal to pro se litigants," and that requiring the warning "would force upon district judges the potentially burdensome, time-consuming, and fact-intensive task of making a case-specific investigation and calculation of whether the AEDPA limitations period has already run or will have run by the time the petitioner returns to federal court." *Id.*

448 F.3d at 1153-54. For that matter,

> Rasberry's inability correctly to calculate the limitations period is not an extraordinary circumstance warranting equitable tolling. Although we have yet to consider whether a *pro se* petitioner's ignorance of the law is an extraordinary circumstance, other circuits have held that it is *not*. *See, e.g., Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) ("[T]his court has repeatedly held that ignorance of the law alone is not sufficient to warrant equitable tolling." (quotation marks and citation omitted)); *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) ("[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling."); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir.2000) ("[I]t is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." (quotation marks and citation omitted)); *Felder v. Johnson*, 204 F.3d 168, 171-72 n. 10 (5th Cir. 2000) ("Our conclusion that Felder's unawareness of AEDPA's requirements is insufficient to warrant tolling is also consistent with the determinations of other courts that have faced similar claims."). We now join our sister circuits and hold that a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling. Therefore, Rasberry is not entitled to equitable tolling.

*Id.* at 1155 (emphasis added).

From the case law this rule emerges: If judges or their staff *affirmatively* mislead a petitioner, that may supply an extraordinary circumstance; but no relief is merited if they simply fail to educate a defendant about legal time limits, however subtle or hard to discern, for exercising legal rights. *See, e.g., Greene v. McDaniel*, 381 F. App'x 679, 681 (9th Cir. 2010) (court order dismissing habeas corpus petition without prejudice to the filing of a new petition and application to

13

proceed *in forma pauperis* was not affirmatively misleading, even though the one-year limitations period had expired, and thus it did not constitute an extraordinary circumstance warranting equitable tolling of the limitations period) (citing *Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir.2009) (a "petitioner's misunderstanding of accurate information cannot merit relief")).

Here Clarkson cites at worst only *passively* misleading (by omission) information from a state court judge. That is not enough. Nor is his lack of legal sophistication.[4] And his economic argument -- he was

---

[4] What if a petitioner is retarded or otherwise too mentally impaired to be able to file anything? The Ninth Circuit recognized "severe mental impairment" tolling in *Bills v. Clark*, 628 F.3d 1092, 1093 (9th Cir. 2010) ("We conclude that equitable tolling is permissible when a petitioner can show a mental impairment so severe that [he] was unable personally either to understand the need to timely file or prepare a habeas petition, and that impairment made it impossible under the totality of the circumstances to meet the filing deadline despite petitioner's diligence").

But such an exception opens up an entire new litigation channel. Predictably, petitioners who now miss deadlines in that circuit can force courts to split "impairment hairs" in resolving their personalized equitable tolling arguments. *See, e.g., Jones v. Turner*, 2011 WL 4068284 at * 1 (9th Cir. Sep. 14, 2011) (applying *Bills* to refuse a request for remand to determine equitable tolling; "the district court found that Jones was able to file a habeas petition despite his mental impairments, and that he did not demonstrate that he needed to rely on other inmates to do so. The record supports these findings."); *see also Higginbotham v. Tanner*, 2011 WL 3268128 at * 3-4 (E.D. La. Jul. 29, 2011) (mental illness). One can easily imagine routine "impairment" hearings and decisions turning on arbitrary distinctions, should as whether a "jailhouse lawyer" was involved -- as seen in *Jones* -- which in turn would lead to further litigation over how savvy that "lawyer" was, and so on.

delayed by the need to raise money to hire legal counsel -- fails outright, for virtually every petitioner would be entitled to tolling if that qualified as an extraordinary circumstance. "Just as time waits for no one, there are limits on how long our legal system will wait for anyone to bring a claim." *Chavez,* 647 F.3d at 1058. Nicolas Clarkson's § 2254 petition is time-barred[5] and therefore must be **DISMISSED**.

Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this

---

Clarkson is not mentally impaired, but with only a high school education he could not be expected to grasp a legal point that eluded his three lawyers. On the other hand, courts are simply not in a position to sort out the legally savvy from the just plain indolent, and creating a "legal ignorance" exception obviously would undermine the very finality Congress sought to achieve with § 2244(d)(1)(A). If the *Coleman* Court could send a petitioner to his death over his attorney's simple negligence, then federal habeas courts can dismiss § 2254 petitions over mere legal ignorance. To the savvy and quick may sometimes go life or liberty denied to those who are less adept.

[5] His request for an evidentiary hearing -- to "develop the facts relating to his due diligence in pursuing the rights at issue," doc. 14 at 2 -- is denied. For such a hearing Clarkson normally would have to surmount federal habeas law's "additional restrictions" as explained in *Chavez*, 647 F.3d at 1060 n. 1; *Wilson v. Humphrey*, 2011 WL 4748573 at * 1 n. 1 (M.D. Ga. Oct. 5, 2011) (collecting cases). But because tolling "is a purely federal issue, which did not arise until [Clarkson's] federal habeas petition was filed[,]" *Chavez*, 647 F.3d at 1060 n. 1, those restrictions do not apply.

For that matter, there are no relevant facts in dispute. The state court judge said what he said, doc. 12-12 at 79-80, and *how* Clarkson's lawyers were negligent is irrelevant because even their *per se* negligence would not support equitable tolling here. The only other relevant fact is Clarkson's own profession of legal ignorance, which the Court accepts as true.

stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  14th  day of November, 2011.

*[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA